**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAEID MOTEVALI, *et al.*,

|  |  |  |  |
|---|---|---|---|
|  | : |  |  |
| Plaintiffs, | : | Civil Action No.: | 23-2133 (RC) |
|  | : |  |  |
| v. | : | Re Document No.: | 5 |
|  | : |  |  |
| ANTONY J. BLINKEN, *et al.*, | : |  |  |
|  | : |  |  |
| Defendants. | : |  |  |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs Saeid Motevali and Azam Bitarafan bring this suit to compel Antony J.

Blinken, in his official capacity as Secretary of the U.S. Department of State, and Julie M. Stufft,

in her official capacity as Deputy Assistant Secretary for Visa Services in the Bureau of Consular

Affairs, collectively ("Defendants"), to adjudicate Ms. Bitarafan's visa application, which has

been stuck in administrative processing for approximately twenty months.  Generally speaking,

Plaintiffs allege that Defendants have improperly withheld and unreasonably delayed action on

Ms. Bitarafan's visa application in violation of the Administrative Procedure Act ("APA") and

the Mandamus Act.  Defendants have moved to dismiss Plaintiffs' complaint.  For the reasons

set forth below, the motion to dismiss is granted.

## II. BACKGROUND

### A. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the

issuance of visas to various categories of immigrants seeking to enter the United States,

including, as relevant here, relatives of U.S. citizens.  *See* 8 U.S.C. § 1154; *see also* 8 C.F.R.

§ 204.1(a)(1), (b); *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *1 (D.D.C. Jan. 30, 2024). A U.S. citizen seeking permanent resident status for a parent or other family member may file Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.1(a)(1); *see also* 8 U.S.C. § 1154; *id.* § 1151(b)(2)(A)(i) (defining an "immediate relative[]" to include "parents" for purposes of Form I-130 petitioners). If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing. 8 C.F.R. § 204.2(a)(3). The NVC serves as the visa application processing center for the State Department. *Id.*

Following approval of the petition, the foreign parent must submit paperwork and processing fees to the NVC. The NVC then schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence. 22 C.F.R. § 42.62. The consular officer must either issue or refuse the visa following the interview. *Id.* § 42.81(a).

### B.  Factual Background

On October 2, 2019, Plaintiff Saeid Motevali, a United States citizen, filed an I-130 visa application on behalf of his mother, Plaintiff Azam Bitarafan, an Iranian national. *See* Compl. ¶¶ 72–74, ECF No. 1. On March 27, 2021, USCIS approved the I-130 petition and transferred it to the NVC for processing. *Id.* ¶ 75. Ms. Bitarafan was then granted a consular interview at the U.S. Embassy in Colombo, Sri Lanka, where she was interviewed on December 1, 2022. *Id.* ¶¶ 78–79. After the interview, Ms. Bitarafan was informed that her visa application had been "refused" under section 221(g) of the INA "pending further administrative processing." *Id.* ¶¶ 80–81. She was also asked for additional information regarding her visa application, which she quickly provided. *See id.* ¶¶ 82–83.

Despite numerous inquiries, Plaintiffs have received no meaningful response or a timeline for the processing of Ms. Bitarafan's application.  *See id.* ¶¶ 87–88.  As of July 2024, her application for an immigrant visa to the United States appears to have been refused, *see* Ex. C, Compl., ECF No. 1-3 (identifying Ms. Bitarafan's NVC visa application number (CLM2021586002)); *Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx, though the same page of the State Department's website suggests that her application remains subject to additional administrative processing before a final decision is rendered, *see Visa Status Check* ("If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing.  You will receive another adjudication once such processing is complete.").

Meanwhile, the delay in receiving a final decision on Ms. Bitarafan's visa application has caused Plaintiffs and their family "severe emotional distress and psychological harm."  Compl. ¶ 94.  This is due, in large part, to the fact that "Plaintiffs have been separated from one another for over 9 years," *id.* ¶ 7, and now fear that that separation may become "indefinite," *id.* ¶ 92. Moreover, Plaintiffs' ongoing separation has caused "immense" financial strain on both Plaintiffs because it has required them "to financially maintain two homes"—one in Iran and one in the United States.  *Id.* ¶¶ 101–02.

### C.  Procedural Background

On July 24, 2023, just under eight months after Ms. Bitarafan's visa application was refused, Plaintiffs filed a four-count complaint to compel Defendants to adjudicate her visa application.  Plaintiffs maintain that Defendants retain jurisdiction over Ms. Bitarafan's visa application and further allege that Defendants' delay is unlawful and unreasonable under the

APA and the Mandamus Act.  *See id.* ¶¶ 118–35, 149–51, 165–79.  In their complaint, Plaintiffs request that this Court mandate that Defendants adjudicate Ms. Bitarafan's visa application within thirty days.  *Id.* at 31–32.

Defendants have moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1, ECF No. 5. Plaintiffs oppose Defendants' motion, *see* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 1, ECF No. 7, and Defendants have filed a reply, *see* Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 9.  Defendants' motion is thus ripe for consideration.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In determining whether there is jurisdiction, the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of*

*Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  Furthermore, "[t]he Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions."  *Arabzada v. Donis*, No. 23-cv-655, 2024 WL 1175802, at *2 (D.D.C. Mar. 19, 2024); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

### B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the

assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*,

550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.

*Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor

must a court presume the veracity of legal conclusions that are couched as factual allegations, *see*

*Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

Defendants raise four arguments in favor of dismissing the complaint.  First, they contend

that Plaintiffs' claims should be dismissed because Plaintiffs failed to name the proper

defendants.  *See* Defs.' Mot. at 4–5.  Second, Defendants argue that Plaintiffs' claims are barred

by the consular non-reviewability doctrine.  *See id.* at 6–10.  Third, Defendants maintain that

there is no clear, non-discretionary duty requiring a consular officer to adjudicate Ms. Bitarafan's

visa application.  *See id.* at 10–18.  Finally, Defendants argue that Plaintiffs' complaint fails to

state a plausible claim of unreasonable delay.  *See id.* at 18–26.  The Court will address these

arguments in turn.

### A.  Improper Defendants

Defendants first argue that the Secretary of State and the Deputy Assistant Secretary for

Visa Services in the Bureau of Consular Affairs are improper defendants because they cannot

provide the relief Plaintiffs seek.  *See id.* at 4–5.  The Court disagrees.

The INA "grants consular officers 'exclusive authority to review applications for visas,

precluding even the Secretary of State from controlling their determinations.'"  *Baan Rao Thai*

*Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*,

197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Relying on this language, Defendants argue that the

Secretary of State and the Deputy Assistant Secretary for Visa Services, neither of whom "can favorably adjudicate an application for a visa," are improper defendants because they "cannot provide the relief requested." *See* Defs.' Mot. at 4–5.  Courts in this district have repeatedly rejected this argument. *See, e.g.*, *Barazandeh*, 2024 WL 341166, at *3; *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022); *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 89–90 (D.D.C. 2022); *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023).  Defendants, who do not even acknowledge this body of case law, offer no compelling reason to depart from that conclusion here.

No one disputes that the INA bars the Secretary of State and the Deputy Assistant Secretary for Visa Services from directing a particular outcome with respect to a visa application. *See Saavedra Bruno*, 197 F.3d at 1156 ("The powers afforded to consular officers include, in particular, the granting, denying and revoking of immigrant and non-immigrant visas."); *Baan Rao*, 985 F.3d at 1024 ("A consular officer . . . has the authority to grant, deny or revoke any visa.").  "Control over a consular officer's visa determinations," however, "is not the same as control over the timing by which the consular officer considers the applications presented to her."  *Al-Gharawy*, 617 F. Supp. 3d at 10.  Put differently, "nothing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary [or the Deputy Assistant Secretary] . . . from directing consular officers 'to conclude matters presented to them' 'within a reasonable time.'"  *Id.* (alterations in original accepted) (quoting 5 U.S.C. § 555(b)); *see also Ramirez*, 594 F. Supp. 3d at 90 ("The provisions and caselaw the government cites stand for a far more limited proposition: that the INA reserves for consular officials the power to evaluate applications on the merits.").  Here, Plaintiffs do not challenge a consular officer's adjudication of Ms. Bitarafan's visa

application and seek only timely adjudication of her visa application.  The Secretary of State and

the Deputy Assistant Secretary for Visa Services are thus properly named defendants.

### B.  Consular Non-Reviewability

Defendants next argue that the doctrine of consular non-reviewability bars Plaintiffs'

claims.  *See* Defs.' Mot. at 6–10.  As its name suggests, the consular non-reviewability doctrine

"shields a consular official's decision to issue or withhold a visa from judicial review."  *Baan*

*Rao*, 985 F.3d at 1024; *see also Saavedra Bruno*, 197 F.3d at 1160 ("[C]onsular visa

determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*,

338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the

political branch of the Government to exclude a given alien").  Defendants acknowledge that

there are "two narrow" exceptions to this general prohibition, *see* Defs.' Mot. at 6 (quoting *Baan*

*Rao*, 985 F.3d at 1024), but argue that neither apply to "a suit seeking to compel a further

decision on a visa application that has already been refused," *see id.* at 6–7.  Defendants

conclude, therefore, that the general bar applies and that the consular official's decision to refuse

Ms. Bitarafan's visa application "is immune from review."  *See id.* at 9.

The Court will assume, favorably to Plaintiffs, that the doctrine of consular non-

reviewability does not bar review of their claims.  As Defendants concede, multiple "judges in

this District have held that the [consular non-reviewability] doctrine does not apply in cases

where, as here, a consular officer has refused a visa application under" section 221(g).  *See id.* at

7.  Those courts have explained that "the consular nonreviewability doctrine applies only to *final*

decisions"; it "does not bar judicial review of a consular officer's delay when a visa application

has been *provisionally refused pending a final decision*."  *See Al-Gharawy*, 617 F. Supp. 3d at 11

(emphases added) (collecting cases).  Defendants counter that the consular officer's refusal of

Ms. Bitarafan's visa application *was* a final decision.  In other words, they argue that Ms.

Bitarafan's visa application was not conditionally or provisionally refused, but rather that the

consular officer's refusal of her visa was a "final" decision "unless superseded by another

decision."  *See* Def's. Mot. at 8.

Until recently, the Court would be inclined to disagree with Defendants' characterization.

After all, courts have consistently held that where, as here, a visa "application is still undergoing

administrative processing," the State Department's "decision is not final" "even where a refusal

has been relayed."  *See Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL

1308376, at *5 (D.D.C. Mar. 19, 2020); *see also Al-Gharawy*, 617 F. Supp. 3d at 17 (concluding

that the doctrine of consular non-reviewability did not apply to review of application in

"administrative processing" after section 221(g) "refusal"); *Vulupala v. Barr*, 438 F. Supp. 3d

93, 99 (D.D.C. 2020) (same).  Put another way, "any [p]laintiff with an application in

'administrative processing' has not yet received a final decision."  *Nine Iraqi Allies Under*

*Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287

(D.D.C. 2016).

The Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL

3517852 (D.C. Cir. July 24, 2024) (per curiam), casts doubt on the accuracy of the reasoning in

those decisions.  In *Karimova*, the court explained that once a consular official refuses a visa

application, the visa has been "officially refused."  *Id.* at *2.  That is so even if the consular

officer simultaneously chooses to place the application in administrative processing: a "visa

application remains officially refused" "[u]nless and until" a consular officer decides to "re-open

and re-adjudicate the applicant's case."  *Id.*  Applied here, *Karimova* thus suggests that once "[a]

consular officer reviewed [Ms. Bitarafan's] application, interviewed her, and ruled that no visa

would be granted," Ms. Bitarafan's visa application was "officially refused" notwithstanding its later placement in administrative processing.  *See id.* at *4.

The Court need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one.  *See id.* at *5 (declining to "decide whether th[e] principle of [consular] nonreviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision").  That is because, as illustrated below, Plaintiffs' claims fail on their merits in any event.

### C.  Clear and Non-Discretionary Duty

Defendants' third argument is that Plaintiffs' claims are not reviewable because Plaintiffs have not identified "a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application."  *See* Defs.' Mot. at 10–18.  Their argument is based on the fact that "[t]o state a claim for unreasonable delay under the APA, a plaintiff must allege that the agency failed to take a *discrete agency action* that it is *required to take*."  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (emphases added) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).  In other words, "the APA 'allows courts to provide relief for [an agency's] failure to act,'" but only when an agency has failed to take a specific, mandatory action.  *Arabzada*, 2024 WL 1175802, at *4 (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14 (D.D.C. 2022)).  By a similar token, courts may resort to the "'drastic' remedy" of mandamus only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a *clear duty to act*; and (3) there is no other adequate remedy available to plaintiff."  *Babamuradova*, 633 F. Supp. 3d at 19 (emphasis added) (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)).  There is thus a common theme: to proceed under either the

APA or the Mandamus Act based on a claim of "an agency's unreasonable delay . . . , a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Arabzada*, 2024 WL 1175802, at *4; *see also Babamuradova*, 633 F. Supp. 3d at 19 ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

Here, too, the Court will assume favorably to Plaintiffs that their complaint identifies a clear, non-discretionary duty. This is a *very* generous assumption given that Plaintiffs largely (if not exclusively) rely on section 555(b) of the APA as the source of such a duty. *See* Pls.' Opp'n at 20–21; *see also* Compl. ¶ 45. The Circuit recently made crystal clear, however, that section 555(b) does not impose a clear, non-discretionary duty on a "consular officer to re-adjudicate [an] already-refused [visa] application." *Karimova*, 2024 WL 3517852, at *3. That being so, Plaintiffs may not rely on "[s]ection 555(b) of the APA as the source of the consular officer's alleged duty to act." *Id.* Again, though, the Court need not scour Plaintiffs' complaint and opposition briefing to determine whether they have alleged a clear, non-discretionary duty stemming from another source; their claims fail on the merits.

### D. Unreasonable Delay

Finally, the Court turns to Defendants' argument that Plaintiffs' complaint fails to state a plausible claim of unreasonable delay. *See* Defs.' Mot. at 18. Simply put, Defendants contend that Plaintiffs fail to state a plausible claim because the delay here—roughly twenty months—"is not unreasonable as a matter of law." *Id.*

Plaintiffs' claim of unreasonable delay is governed by the APA which, among other things, requires an agency to "proceed to conclude a matter presented to it" in a "reasonable

time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "The 'central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, No. 23-cv-1244, 2024 WL 1178453, at *5 (D.D.C. Mar. 19, 2024) (quoting *In re Core Commc'ns., Inc.*, 531 F. 3d 849, 855 (D.C. Cir. 2008)). Courts in this circuit consider six factors (the so-called "*TRAC* factors") when evaluating unreasonable-delay claims:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Courts use the *TRAC* factors to assess claims of unreasonable delay under both the Mandamus Act and the APA. *See S. Utah Wilderness All.*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Applying the *TRAC* factors to the present case, the Court finds that Plaintiffs' complaint fails to state a plausible claim of unreasonable agency delay.

### 1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in Defendants' favor.  Generally, the first *TRAC* factor is the "most important" and carries the most weight.  *See In re Core Commc'ns.*, 531 F. 3d at 855.  Courts typically consider the first and second factors together, however, as both analyze whether there is "sufficient rhyme and reason to explain the [g]overnment's response time." *Dastagir v. Blinken,* 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up); *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

Here, Ms. Bitarafan's visa application has been delayed for approximately twenty months.[1]  Although Plaintiffs allege that the timeframe established by Congress in 8 U.S.C. § 1571(b)—which states that the State Department must adjudicate immigration benefits within 180 days—applies to the instant case, *see* Pls.' Opp'n at 26, Defendants are correct that "[n]o statutory or regulatory timeline exists within which the State Department or a consular office must re-adjudicate visa applications," *Barazandeh*, 2024 WL 341166, at *8 (quoting *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *7 (D.D.C. June 26, 2023)); *see also* Defs.' Mot. at 20–21.  That being so, the Court "'turn[s] to case law as a guide' to determine the

---

[1] The parties disagree regarding the length of the delay.  Plaintiffs contend the delay should be measured starting from June 1, 2022—the date that Ms. Bitarafan submitted Form DS-260.  *See* Pls.' Opp'n at 26.  Defendants argue that the clock began running on December 1, 2022—the date the consular officer refused Ms. Bitarafan's visa application.  *See* Defs.' Reply at 13.  In similar cases, courts have assessed delays in visa processing using the period between "the last [g]overnment action" and the issuance of the opinion.  *See, e.g.*, *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing a seventeen-month delay between "the last [g]overnment action" and the opinion's issuance); *Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (analyzing a twenty-two-month delay between NVC's last action and the opinion's issuance).  The last clear government action occurred on December 1, 2022, when the consular officer refused Ms. Bitarafan's visa application under section 221(g).  Therefore, the period the Court will use to analyze the delay in the instant case is the roughly twenty-month span between the consular officer's refusal and the issuance of this Opinion.

reasonableness" of Defendants' delay in processing Ms. Bitarafan's visa application.  *See Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable."  *Id.* (quoting *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)).  Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable.  *See Barazandeh*, 2024 WL 341166, at *8 (collecting cases).  And indeed, recently, the D.C. Circuit found that a delay of four-and-one-half years was not unreasonable.  *See Da Costa*, 80 F.4th at 342.  Although Plaintiffs point to decisions in other jurisdictions that have found shorter delays to be unreasonable, *see* Pls.' Opp'n at 23–24, this Court is persuaded by the overwhelming trend within this circuit.  It finds, therefore, that, given the circumstances, Defendants' delay of approximately twenty months is not unreasonable.

### 2.  *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors tilt in Plaintiffs' favor.  Those factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay.  *See TRAC*, 750 F.2d at 80.

Plaintiffs allege that delayed adjudication of Ms. Bitarafan's visa application has caused them "severe emotional distress and psychological harm" because "Plaintiffs have been separated from one another for over 9 years" and fear that that separation may become "indefinite" the longer the delay persists.  *See* Compl. ¶¶ 7, 92–95.  "Prolonged separation from a spouse or immediate family member may be considered a risk to human health and welfare." *Barazandeh*, 2024 WL 341166, at *8; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177

(D.D.C. 2020) (finding the third and fifth *TRAC* factors weighed in favor of the plaintiffs considering prolonged separation of spouses); *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *7 (D.D.C. July 29, 2022) (similar); *Pourshakouri v. Pompeo*, 2021 WL 3552199 at *10 (D.D.C. Aug. 11, 2021) (finding third and fifth factors weighed in favor of 83-year-old plaintiff living alone and separated indefinitely from children and grandchildren).  Defendants do not contest that proposition.  Instead, they argue that prioritizing Ms. Bitarafan's visa application "will simply benefit a certain noncitizen to the detriment of others who may have experienced the same or worse impacts from a delay" because resources would have to be directed away "from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the Department's prioritization decisions and place Ms. Bitarafan at the front of the line."  *See* Defs.' Mot. at 25.  True as that may be, these arguments are more appropriately directed at the fourth *TRAC* factor.  Plaintiffs' allegations of harm due to their separation from one another are sufficient for *TRAC* factors three and five to weigh in their favor.

### 3.  *TRAC* Factor 4

The Court next considers the fourth *TRAC* factor—a factor which carries substantial weight.  *See Da Costa*, 80 F.4th at 340, 343.  The fourth factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority."  *Id.* at 343 (quoting *TRAC*, 750 F.2d at 80).  Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space and produce[] no net gain."  *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).  In fact, the D.C. Circuit "has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and

produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100) (alterations and quotations omitted).

The Circuit's recent decision in *Da Costa* aptly illustrates these principles. There, the plaintiffs sought an order compelling USCIS to adjudicate their visa applications within fourteen days, to process any additional requested information within seven days, and to forward any approved applications to the NVC for processing within three days. *See Da Costa*, 80 F.4th at 344. In finding that the fourth *TRAC* factor weighed against the plaintiffs, the Circuit explained that the relief the plaintiffs sought was, at bottom, an order that would move their visa petitions "ahead of longer-pending petitions." *Id.* at 343. The court looked unfavorably on such a request in large part because "moving [the] [p]laintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog." *Id.* The court also emphasized that, although "judicial intervention could assist [the plaintiffs], it would likely impose offsetting burdens on equally worthy" applicants that were "equally wronged by the agency's delay." *Id.* at 344 (quoting *In re Barr Lab'ys.*, 930 F.2d at 73). The judges concluded, therefore, that "the effect that [the plaintiffs'] requested relief would have on the queue of petitioners waiting ahead of the [p]laintiffs, weighs against judicial intervention to expedite adjudication of [p]laintiffs' petitions." *Id.*

The same is true here. Compelling agency action on Ms. Bitarafan's visa application would "impose offsetting burdens on equally worthy" applicants by effectively putting Ms. Bitarafan "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain," *In re Barr Lab'ys.*, 930 F.2d at 73, 75. Put slightly differently, granting Plaintiffs' requested relief would "necessarily come at the expense of" applicants who, like Ms. Bitarafan, have likely also been waiting for months or years for their visas to be

adjudicated.  *See Da Costa*, 80 F.4th at 340 (internal quotation marks omitted) (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).  Moreover, granting Plaintiffs their requested relief would require the State Department to "reorder[] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way."  *In re Barr Lab'ys.*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id.*  For all of these reasons, the Court finds that the fourth *TRAC* factor weighs in Defendants' favor.

### 4.   *TRAC* Factor 6

The sixth *TRAC* factor, on the other hand, does not weigh in either party's favor.  This factor requires courts to "determine whether the agency has acted in bad faith in delaying action."  *See Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).  Plaintiffs "did not initially allege impropriety," but now contend that "Defendants' attempt[] to mislead the Court . . . , and [their] claim that a [section] 221(g) refusal is 'final' when the law and Defendants' own statements prove otherwise" demonstrate "bad faith."  *See* Pls.' Opp'n at 29.  The Court does not agree that these unsupported allegations demonstrate bad faith.  The sixth factor is, therefore, neutral.  *See Fakhimi*, 2023 WL 6976073, at *11; *see also Da Costa*, 80 F.4th at 345–46 (finding the sixth *TRAC* factor "neutral" where plaintiffs' allegations of bad faith were "conclusory and implausible").

### 5.   Weighing the *TRAC* Factors

Taking all six *TRAC* factors together, the Court concludes that Plaintiffs have not stated a claim for unreasonable delay under the APA or the Mandamus Act.  *See Barazandeh*, 2024 WL 341166, at *10 (reaching the same conclusion); *Arab v. Blinken*, 600 F. Supp. 3d 59, 72 (D.D.C. 2022) (same).  The relatively minimal twenty-month delay, prior case law, and the fact that

granting Plaintiffs the relief they seek would come at the expense of other similarly-situated applicants that have waited as long (if not longer) for their applications to be adjudicated all contribute to the conclusion that the delay Plaintiffs have experienced has not been unreasonable. While *TRAC* factors three and five do weigh somewhat in Plaintiffs' favor, a holistic review of the factors does not allow these two factors to eclipse the rest.  In this situation, "the government's interests in balancing its own priorities" outweigh the individual harm done to Plaintiffs and their family as they await a final decision.  *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 30, 2024                                   RUDOLPH CONTRERAS
                                                        United States District Judge